NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROSEANN R., ANTHONY F., SERGIO M., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.C., M.S., K.F., K.F., *Appellees.*

No. 1 CA-JV 20-0109
FILED 10-22-2020

Appeal from the Superior Court in Maricopa County
No. JD14966
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant Roseann R.*

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant Anthony F.*

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Sergio M.*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Chief Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**S W A N N**, Chief Judge:

**¶1** Roseann R. ("Mother"), Anthony F., and Sergio M. appeal the juvenile court's order terminating their respective parental rights to A.C.-R., M.S., K.G.F., and K.C.F. (the "Children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** In October 2018, fourteen months after successfully reunifying with the Children after a prior dependency, Mother was evicted from her home, left five-year-old A.C.-R. and three-year-old M.S. with Dolores S., left two-year-old twins K.G.F. and K.C.F. with their maternal grandmother, and disappeared.[1] The Department of Child Safety ("DCS") filed various petitions and amendments, ultimately alleging the Children were dependent as to Mother on the grounds of neglect, substance abuse, and failure to protect from sexual abuse; M.S. was dependent as to his father, Sergio M., on the grounds of neglect and abandonment; and the twins were dependent as to their father, Anthony F., on the grounds of neglect and substance abuse.[2] The juvenile court eventually determined the Children were dependent and adopted case plans of family reunification.

---

[1] We view the evidence in the light most favorable to upholding the juvenile court's order terminating parental rights. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018).

[2] DCS also alleged A.C.-R. was dependent as to her father on the grounds of neglect. The juvenile court terminated his parental rights in March 2020, but he did not challenge the order and is not a party to this appeal.

¶3 Mother has a long history of substance abuse and neglect, having given birth to substance-exposed newborns in 2004, 2006, 2015, and 2016. Her parental rights to four children separate from those in this appeal were terminated as a result of her substance abuse. The earlier dependency, to which the Children at issue here were subject, was also based on substance abuse. She did not complete a urinalysis test after the Children were removed in this case because she "ran out of time," but later admitted she relapsed on methamphetamine before leaving A.C.-R., M.S., K.G.F., and K.C.F. with other caregivers.

¶4 Once the Children were removed, Mother began using methamphetamine every day; DCS referred her for substance abuse treatment and testing, transportation assistance, visitation, and parent-aide services. She attended an intake for substance abuse treatment, where she reported first using methamphetamine around 2003 and last using the day before the assessment, but never returned for services. Substance abuse testing and parent-aide services were closed in January 2019 after Mother failed to engage.

¶5 In December 2018, DCS visited Anthony F.'s home in the hopes of placing the twins in his care, but found he did not have a safe place for them to sleep, appropriate food, car seats, or clothing for them. He had only six diapers and denied having the resources to purchase more. Anthony F. declined in-home services, would not provide information about or contact with the adult son living in his home, and refused to sign a safety plan requiring contact with Mother be supervised. Thus, DCS and the juvenile court remained concerned about Anthony F.'s ability to provide a safe home, adequate food, and protection from Mother's substance abuse. Anthony F. was evicted from the residence in January 2019. He eventually gave DCS information to perform a background check on his adult son in October 2019.

¶6 DCS later learned Anthony F. had a drug-related criminal history and was required to participate in substance abuse testing through the adult probation department. But he denied any substance abuse history, recanted on an agreement to participate in substance abuse testing, and failed to follow through on four separate appointments for DCS to reassess his living situation. Although Anthony F. was compliant with his probation and participated appropriately in supervised visitation, he had extremely limited experience caring for the twins and failed to engage in parent-aide services. And after evaluation, when it was recommended the twins attend a developmental preschool, both Mother and Anthony F. refused to grant permission until the juvenile court strongly encouraged it.

Both parents also refused permission for K.C.F to undergo a recommended medical procedure.

**¶7**        By March 2019, Mother had yet to demonstrate consistent sobriety or engage in substance abuse treatment. She missed two-thirds of her scheduled visits—once because she "didn't feel like seeing her children"—and occasionally arrived at the visits late and unprepared. This pattern disappointed the Children. Anthony F. had likewise "essentially done no services" and either arrived late or left early from the majority of his scheduled visits.

**¶8**        Mother continued to use methamphetamine daily until July 2019, when she enrolled in a ninety-day inpatient substance abuse treatment program. She attended visitation but struggled to supply appropriate food and diapers during visits. Around Mother's completion of her inpatient program—nearly a year after the Children's removal—DCS re-referred Mother for substance abuse testing and treatment and parent-aide services. She was compliant and tested negative for substances. Meanwhile, Anthony F. was again referred for parent-aide services, which he attended, and substance abuse testing, which he did not. Because he never demonstrated sobriety, DCS did not refer Anthony F. for a psychological evaluation.

**¶9**        In September 2019, the juvenile court changed the case plan to severance and adoption. DCS then moved to terminate Mother's parental rights to the Children, Anthony F.'s parental rights to K.G.F. and K.C.F., and Sergio M.'s parental rights to M.S. The DCS caseworker expressed an ongoing concern that Mother displayed a pattern of increasing participation when termination was imminent, in an attempt to "check the boxes" for requested services without appreciating their intended purposes, but then repeatedly relapsing when transitioning from treatment to living independently with the Children.

**¶10**        By the time of the January 2020 termination hearing, Mother and Anthony F. had improved on roughly half the diminished caregiver protective capacities identified during each of their parent-aide services. Mother had been substance-free for six months and compliant with services. She was employed but did not have independent or appropriate housing.

**¶11**        Mother testified she was not concerned with relapse because she was "committed to [her] sobriety," but also admitted she "wanted this before too" and her desire for sobriety had not prevented her from

relapsing. Nonetheless, Mother believed her most recent period of methamphetamine use was a "wake-up call," and her most recent stint in inpatient treatment would be more effective because it was trauma-based, and she had sought trauma-based outpatient therapy afterwards. When asked why she did not commit to services in the first eight months of the dependency, Mother explained she was depressed because she believed Dolores S. had falsely accused her of abandoning the Children and because the methamphetamine "blocked [her] mind of thinking."

¶12 During the termination hearing, the DCS case manager testified that Mother's recent improvement did little to alleviate DCS's concerns regarding her ability to parent, noting that given Mother's "pattern of success and then relapse," even after a prior course of inpatient treatment, a "much longer period of proven sobriety [is necessary] to feel confident that Mom would be able to handle full-time care [of the Children] long term." Indeed, Mother identified stress as a trigger for relapse, but denied that parenting four children would be stressful because her four-hour visits went well. Ultimately, Mother agreed her pattern of substance abuse was emotionally traumatizing to the Children, but when pressed, insisted that with more time, she could demonstrate her commitment to sobriety.

¶13 Anthony F. presented evidence during the termination hearing that he was compliant with the terms of his probation, had secured a safe and appropriate home for the twins, and was physically, financially, and emotionally prepared to parent them. He was employed but had recently been arrested for driving on a suspended license. Throughout his testimony, he was evasive about his drug and criminal history. And although Anthony F. provided a single, clean urine sample in January 2020, he never provided information about his probation and associated drug testing, so the DCS case manager remained concerned given his admitted history of substance abuse and failure to submit to any other substance abuse treatment or testing. When asked about his delay in participating in services, Anthony F. responded that he believed the services were voluntary.

¶14 Meanwhile, Sergio M. was serving a six-year prison sentence on gang- and weapons-related charges and did not anticipate being released until October 2022. Sergio M. testified at the termination hearing that he had had contact with M.S. during the eight months he was between prison sentences in 2016. During the dependency, he sent letters and recordings to his mother and Dolores S. to pass on to M.S. and provided supplies for M.S. "through" his mother. Although Sergio M. wanted to

develop more of a relationship with M.S., at the same time, he admitted that he had not "been a part of [M.S.'s] life for a long time" and it was selfish "to make [his] son wait" for his release from incarceration. The DCS case manager agreed that further delay in achieving permanency was not in M.S.'s best interests.

¶15 The DCS case manager testified the Children were not all placed together, but they were bonded to their placements, with whom they had spent the majority of their lives. Additionally, the placements were meeting the Children's regular and special needs and willing to adopt and provide sibling visits. Overall, DCS contended that it was in the Children's best interests to be adopted into permanent homes.

¶16 After taking the matter under advisement, the juvenile court entered an order terminating Mother's, Anthony F.'s, and Sergio M.'s parental rights to their respective Children. The court found DCS had proved by clear and convincing evidence that termination was warranted as to Mother on the grounds of chronic substance abuse and failure to remedy the circumstances causing an out-of-home placement within the statutory period; as to Anthony F. on the grounds of failure to remedy the circumstances causing an out-of-home placement within the statutory period; and as to Sergio M. on the grounds of lengthy incarceration; and DCS proved termination was in the Children's best interests by a preponderance of the evidence. The parents appealed.

## DISCUSSION

### I. Mother

¶17 To terminate a parental relationship, the juvenile court must find at least one statutory ground for severance by clear and convincing evidence. *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227, ¶ 12 (2020). A parent's rights may be terminated pursuant to A.R.S. § 8-533(B)(3) when: (1) the parent has a history of chronic abuse of controlled substances; (2) the parent is unable to discharge parental responsibilities because of the substance abuse; and (3) there are reasonable grounds to believe that the condition will continue for a prolonged, indeterminate period. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010). We will affirm a termination order "unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶ 7 (App. 2009) (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

¶18        Mother argues DCS failed to prove the statutory ground of substance abuse by clear and convincing evidence.  Mother does not contest the court's findings that her history of chronic substance abuse interferes with her ability to parent; rather, she argues DCS's contention that "Mother has relapsed before, so she'll relapse again" is an insufficient basis to conclude that Mother's condition will continue for a prolonged, indeterminate period.[3]  While such a characterization alone may indeed be insufficient, the juvenile court is directed to consider "the length and frequency of Mother's substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses" in evaluating a future ability to parent.  *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016).

¶19        Mother has a twenty-five-year history of abusing methamphetamine.  Despite having her parental rights to four other children terminated as a result of her substance abuse, Mother continued to use methamphetamine while pregnant with at least three of her next four children—the Children at issue here.  With the assistance of inpatient substance abuse treatment, Mother was able to achieve sufficient sobriety to regain custody of those children for approximately one year before relapsing on methamphetamine.  And, when the Children were again removed, Mother failed to participate in substance abuse treatment or testing because she believed she had been treated unfairly.  She instead *increased* her methamphetamine use over a period of eight months before finally engaging in services.  By the time of trial, Mother had demonstrated only three months' sobriety outside of inpatient treatment.  Moreover, Mother identified stress as a trigger for her methamphetamine use, but inexplicably denied that caring for four children under the age of seven would be stressful.

_____

[3]        Mother also suggests the juvenile court erred in concluding her substance abuse was likely to continue for a prolonged, indeterminate period because DCS presented no expert testimony on the subject.  She cites no authority for the proposition that A.R.S. § 8-533(B)(3) requires expert testimony on facts such as these, and we do not find supporting authority either.  *See, e.g.*, *Raymond F.*, 224 Ariz. at 379, ¶¶ 27–29 (holding that the juvenile court could reasonably conclude that a parent's drug abuse was likely to continue for a prolonged, indeterminate period based on evidence that the parent had a significant history of substance abuse, had recently used drugs, and failed to participate in reunification services designed to address substance abuse).

¶20        A temporary period of abstinence from drugs does not outweigh a significant history of abuse or consistent inability to abstain during the case. *Raymond F.*, 224 Ariz. at 379, ¶ 29 ("It is not the number of times that [the parent] has tested positive or negative for drug abuse that is key, but rather, it is the fact that [the parent] has consistently failed to abstain from drugs . . . ."); *see also Jennifer S.*, 240 Ariz. at 288, ¶ 25 (concluding a parent's "efforts to achieve and maintain sobriety in the months immediately preceding the severance hearing . . . d[id] not outweigh her significant history of drug abuse or her demonstrated inability to remain sober during much of the case"). Further, "[a parent's] failure to remedy h[er] drug abuse[,] despite knowing the loss of h[er] children was imminent, is evidence [s]he has not overcome h[er] dependence on drugs." *Raymond F.*, 224 Ariz. at 379, ¶ 29. On this record, a factfinder could reasonably determine that Mother suffered from chronic substance abuse that was likely to continue for a prolonged, indeterminate period.

¶21        Although Mother points to her testimony that the inpatient substance abuse treatment she received during the course of this dependency was qualitatively different (and more effective) than prior programs, the juvenile court did not find the evidence sufficiently persuasive to overcome Mother's substance abuse history. We will not second-guess this evaluation of the evidence; the juvenile court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), even when those facts are "sharply disputed," *Pima Cty. Severance Action No. S-1607*, 147 Ariz. 237, 239 (1985).

¶22        Mother also argues she was not given the time and opportunity to demonstrate her ability to parent, and therefore deprived of due process, when DCS sought termination of her parental rights before determining whether her inpatient substance abuse treatment was effective. We defer to the juvenile court's factual findings, including those regarding DCS's diligence in pursuing reunification, so long as they are supported by substantial evidence. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81–82, ¶¶ 13, 16 (App. 2005). Mother's argument is not well-taken here.

¶23        DCS is not required to ensure Mother's participation in services, *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994); nor must the court "leav[e] the window of opportunity for remediation open indefinitely," *Maricopa Cty. Juv. Action No. JS-501568*, 177

Ariz. 571, 577 (App. 1994). Mother was immediately referred for substance abuse treatment and testing when the Children were removed in October 2018, providing the opportunity to address the main impediment to her reunification—substance abuse. Instead of using this opportunity, Mother chose to increase her methamphetamine use over the course of eight months before engaging in services. To the extent Mother believes time to demonstrate reliable compliance was lacking, it resulted from her own dilatory conduct, not DCS's efforts. Accordingly, Mother fails to establish reversable error.[4]

## II.     Anthony F.

¶24         A parent's rights to a child may be terminated under A.R.S. § 8-533(B)(8)(a) when:

> [T]he child is being cared for in an out-of-home placement under the supervision of the juvenile court, . . . [DCS] has made a diligent effort to provide appropriate reunification services[,] . . . [t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order[,] . . . and the parent has substantially neglected or wil[l]fully refused to remedy the circumstances that cause the child to be in an out-of-home placement.

In evaluating the parent's performance, the juvenile court must consider "the availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8-533(D). We will affirm a finding under this section "unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Denise R.*, 221 Ariz. at 94, ¶ 7 (quoting *Murillo*, 79 Ariz. at 9).

¶25         Anthony F. argues DCS failed to prove termination of his parental rights to K.C.F. and K.G.F. was warranted because there was no evidence of substance abuse, and he eventually obtained an appropriate home. Anthony F. contends the fact that he was "recalcitrant with the

---

[4]      Because we find DCS proved termination of Mother's parental rights was warranted on the grounds of substance abuse, we need not and do not address her claims of error as to the other grounds. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 5 (App. 2017).

Department" is insufficient to warrant termination of his parental rights. On this record, we disagree.

¶26        Severance based on a child's time in an out-of-home placement "is not limited to those who have *completely* neglected or willfully refused to remedy such circumstances." *JS-501568*, 177 Ariz. at 576 (emphasis added). Rather, the juvenile court is "well within its discretion in finding substantial neglect and terminating parental rights" where a parent makes only "sporadic, aborted attempts to remedy" the situation that caused the Children to come into DCS care in the first place. *Id.* Indeed, "[l]eaving the window of opportunity for remediation open indefinitely is not necessary, nor . . . [is it] in the child's or the parent's best interests." *Id.* at 577. This scheme gives the parent an incentive to address his deficiencies and assume parental responsibilities as soon as possible, thereby furthering a young child's interest in permanency. *See id.* Thus, an uncooperative parent may indeed find his efforts "too little, too late" if his obstinance prevents DCS from evaluating parental fitness in a timely manner. *See id.*

¶27        Here, DCS was preparing to place the twins with Anthony F. once it approved his home. But Anthony F. did not secure the necessary supplies, declined to provide the information and access DCS needed to assess the appropriateness of another adult living in the home with K.C.F. and K.G.F., and refused to sign a safety plan that would ensure the twins were protected from Mother's substance abuse. He did not participate in any services for at least the first six months of the dependency and did not have his residence and its occupants approved by DCS for at least another six months thereafter. Because Anthony F. waited to engage with the parent aide, the service had yet to be completed by the time of the termination trial. Anthony F. provided no reasonable explanation for his failure to complete these relatively straightforward tasks. Meanwhile, the twins were being cared for and bonding with someone else. Given these circumstances, we cannot say the juvenile court acted unreasonably in concluding Anthony F.'s recalcitrance in engaging in the case plan was essentially his neglect or willful refusal to remedy the circumstances causing the twins to be in out-of-home care for longer than nine months.

¶28        Anthony F. also argues DCS failed to prove termination of his parental rights was in the twins' best interests by a preponderance of the evidence. We review the best-interests finding for an abuse of discretion. *See Titus S.*, 244 Ariz. at 369, ¶ 15.

**¶29** When evaluating best interests, the juvenile court must consider all relevant facts and determine, on a case-by-case basis, whether a preponderance of the evidence supports a finding that a child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6; *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4–5, ¶ 16 (2016). The benefit to a child, particularly where he has been out of the parents' care for a lengthy period, is the opportunity for permanency in lieu of remaining indefinitely in a situation where "parents maintain parental rights but refuse to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988), and citing *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998)) (emphasis omitted). "At this stage, the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded the interest of the unfit parent in maintaining parental rights." *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37 (2005).

**¶30** The juvenile court here found Anthony F. unreasonably withheld consent for medical and developmental services from the twins and delayed engaging in the services required under the case plan. Meanwhile, the twins were in an adoptive placement that was "diligently meeting" their regular and special needs and willing to continue sibling visits. On this record, we cannot say the juvenile court abused its discretion in balancing the evidence in favor of the twins' interests in permanency.

## III. Sergio M.

**¶31** A parent's rights may be terminated if "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). Whether this ground is proved is a fact-specific inquiry requiring examination of "all relevant factors," including:

> (1) [T]he length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to

provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. 246, 251–52, ¶ 29 (2000). "[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance." *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 17 (App. 2014) (quoting *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007)). Accordingly, we defer to the juvenile court's findings and the weight that court assigned to the evidence and the factors. *Id.* at 441, ¶ 14. We will affirm "unless, as a matter of law, no reasonable evidence supports those findings." *Id.* at 440, ¶ 12.

**¶32** In arguing DCS failed to prove his incarceration deprived M.S. of a normal home for a period of years, Sergio M. relies on evidence that he had and could continue to maintain some presence in M.S.'s life while incarcerated, with his mother's assistance. If true, this evidence would weigh in favor of maintaining the parental relationship, but it neither compels nor precludes severance. *See Rocky J.*, 234 Ariz. at 440–41, ¶¶ 12, 14. Indeed, the inquiry under A.R.S. § 8-533(B)(4) "focuses on the child's needs during the incarceration and not solely on whether the parent would be able to continue the parent-child relationship." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶ 14 (App. 2016).

**¶33** The juvenile court did not find the limited presence Sergio M. could offer M.S. sufficiently persuasive to overcome other factors, including: Sergio M. did not have a strong relationship with M.S. before his incarceration; Sergio M. had never actively parented M.S. and would likely require reunification services after his release, further delaying M.S.'s opportunity for permanency; no other parent was available to M.S. during Sergio M.'s incarceration; and, under the circumstances, Sergio M.'s physical absence from M.S.'s daily life between the ages of three and seven or eight would deprive M.S. of a normal home. We defer to that evaluation, which is both well-reasoned and supported by the record. *See supra* ¶ 21.

**¶34** Sergio M. also argues DCS failed to prove termination of his parental rights was in M.S.'s best interests by a preponderance of the evidence. Specifically, Sergio M. argues the court was unable to fully evaluate best interests because the lack of phone calls and visits through the prison—which he blames on DCS—prevented him from communicating and bonding with M.S. while incarcerated. We again review the best-interests finding for an abuse of discretion. *See Titus S.*, 244 Ariz. at 369, ¶ 15.

¶35         The juvenile court here found, irrespective of Sergio M.'s efforts or ability to maintain a relationship with M.S., that Sergio M. would not be available to parent him "for several years yet" and "it would not be fair for the [child] to have to wait longer" for permanency.  Sergio M. admitted as much in his own testimony, *see supra* ¶ 14, and the immediate availability of a stable, loving, permanent placement for M.S. forms a sufficient basis to sustain the court's determination that termination was in the child's best interests.  *See Demetrius L.*, 239 Ariz. at 4–5, ¶¶ 16–17 (noting a prospective adoption alone may provide sufficient benefit to support a best-interests finding).  Sergio M. thus fails to prove error.

## CONCLUSION

¶36         The juvenile court's order terminating Mother's, Anthony F.'s, and Sergio M.'s parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA